## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 24 2016, 6:35 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Patricia Caress McMath
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General

Robert J. Henke
Deputy Attorney General

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In Re the Matter of Da.H. and Dy.H.:

K.H. (Mother),
*Appellant-Respondent,*

v.

The Indiana Department of Child Services,
*Appellee-Petitioner.*

June 24, 2016

Court of Appeals Case No. 49A02-1510-JT-1744

Appeal from the Marion Superior Court

The Honorable Marilyn Moores, Judge

The Honorable Larry Bradley, Magistrate

Trial Court Cause No. 49D09-1502-JT-50 49D09-1502-JT-51

**Vaidik, Chief Judge.**

# Case Summary

[1] K.H. (Mother) appeals the termination of her parental rights to her twin four-year-old sons, Da.H. and Dy.H., arguing that the evidence is insufficient to support the juvenile court's judgment. The children were adjudicated children in need of services (CHINS) because Mother did not have stable housing, she admitted using marijuana and tested positive for methamphetamine, and her mental-health status was uncertain. In the twenty-two months after the children were removed, Mother moved between the homes of family and friends seven times, did not consistently submit to random drug screening, and was not willing to pursue alternate treatments for her mental-health issues when therapy alone was insufficient. Concluding that the Indiana Department of Child Services (DCS) proved the statutory grounds for termination of the parent-child relationship (TPR) by clear and convincing evidence and that the trial court's judgment is not clearly erroneous, we affirm.

# Facts and Procedural History

[2] Da.H. and Dy.H., born September 12, 2011, are the twin sons of Mother and D.H. (Father). DCS filed a CHINS petition on January 7, 2014, alleging that Mother did not have stable housing for the children, she admitted using marijuana and subsequently tested positive for methamphetamine, and DCS was unsure of Mother's mental-health status because "she ha[d] previously been

detained for intentionally cutting herself." Ex. 7, p. 11. Two weeks later, Mother admitted that the children were CHINS and that she "has substance abuse issues and mental health needs which need to be consistently addressed. [Mother] has not properly addressed these issues and therefore the court should intervene to ensure the children's safety and well-being." Ex. 10, p. 28. The juvenile court adjudicated the children CHINS, finding that they were in need of services for the reasons alleged in the DCS petition. *Id.*

[3] The juvenile court entered a parental-participation order that required Mother to participate in a home-based counseling program, complete a substance-abuse assessment and successfully complete all treatment recommendations, submit to random drug and alcohol screens, and complete a mental-health evaluation and follow all recommendations resulting from it. Ex. 11, p. 32. Accordingly, DCS generated referrals for home-based case management, mental-health services, and substance-abuse treatment.

[4] The home-based case-management referral was intended to help Mother find a job, connect to community resources, and, ultimately, find stable housing. But Mother was unable to obtain stable housing. She moved between the homes of friends and family at least seven times during the CHINS proceeding. She lived with her mother in Martinsville, with Father and his aunt in Speedway, with Father at a motel, with her mother at a new home in Indianapolis, with her cousin, back to her mother's home, and, finally, with her father. Mother's lack of stable income was one reason that she had difficulty obtaining stable housing. Over the course of the CHINS case, Mother worked for only a few

weeks as a waitress in November 2014, and then she began a part-time cleaning job at a hotel a "couple of months" before the TPR hearing. Appellant's Br. p. 7. The home-based case-management referral was ultimately closed unsuccessfully because of lack of progress.

[5]     DCS also issued referrals for a dual assessment of Mother's mental-health status and substance abuse and for home-based counseling. Mother worked with a therapist consistently over the duration of the CHINS case. According to the therapist, Mother was making some progress, "but we still have significant challenges at this point that we're dealing with." Tr. p. 36. Specifically, Mother had not made enough progress in addressing her anxiety and depression to be discharged from home-based counseling. In addition to the therapy, Mother was prescribed Zoloft for her anxiety and depression. The therapist saw signs of improvement while Mother was taking it, but Mother quit taking it after a month because she did not think it was helping. The therapist encouraged Mother to either return to the prescribing doctor or see a different doctor to explore other treatment options, but Mother declined.

[6]     Beyond the dual assessment for mental-health status and substance abuse, which Mother completed, additional treatment was not recommended or referred for Mother's marijuana use. However, as part of the parental participation order, Mother was required to submit to random drug screening. She was required to call the service provider every day to find out if she needed to report that day and then travel to the screening facility on the assigned days. Because Mother did not have a car, DCS supplied bus passes, and her home-

based service providers offered to take her to the screening facility if she called them in the morning. Yet, apart from the five months between March and August 2014, Mother did not consistently comply with the random screening procedures.

[7] On January 30, 2015, the permanency plan for the children was changed to adoption because of Mother's lack of progress in her services, and DCS filed a TPR petition four days later. The Family Case Managers (FCM) and the court appointed special advocate (CASA) testified at the TPR hearing in September 2015. First, FCM Natalie Hicks, who was the FCM from January 2014 through January 2015, testified that Mother was not able to successfully complete her services and was not ready to parent the children. It was not in the children's best interests to give Mother more time, nor did FCM Hicks think more time would help Mother become ready to parent. Next, FCM Amber Monday, who had the case from March through September 2015, testified that she would not recommend placement with Mother because of the lack of safe, stable housing and Mother's inability to provide for the children financially. The CASA also testified that it was in the children's best interests to be adopted and that Mother should not be given additional time to complete services.

[8] The juvenile court found that Mother's housing was unstable and her income was inconsistent. It found that she had not adequately addressed her mental-health needs and was still "struggling with anxiety and hopelessness which was a barrier to going forward in services," yet she was not taking her medication or pursuing alternative treatment. Appellant's App. p. 29. And the juvenile court

found that Mother was not completing her drug screens consistently—the last one was in March or early April 2015, and was positive for marijuana. The juvenile court concluded that there is a reasonable probability that the conditions that resulted in the children's removal and continued placement outside the home will not be remedied and that termination is in the children's best interest. Accordingly, the court terminated the parent-child relationship between Mother and Da.H. and Dy.H.

Mother now appeals.

# Discussion and Decision

Mother argues that DCS did not prove the statutory requirements for termination by clear and convincing evidence. When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility. *In re I.A.*, 934 N.E.2d 1127, 1132 (Ind. 2010). Rather, we consider only the evidence and reasonable inferences that are most favorable to the judgment of the juvenile court. *Id.* We will not set aside the juvenile court's judgment unless it is clearly erroneous. *Id.* To determine whether a judgment terminating parental rights is clearly erroneous, we review whether the evidence clearly and convincingly supports the juvenile court's findings and whether the findings clearly and convincingly support the judgment. *In re V.A.*, No. 02S04-1602-JT-93, 2016 WL 661748, at *1 (Ind. Feb. 18, 2016).

A petition to terminate parental rights must allege, among other things:

(B) that one (1) of the following is true:

(i)      There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii)     There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii)    The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child[.]

[12]    Ind. Code § 31-35-2-4(b)(2). DCS must prove the alleged circumstances by clear and convincing evidence. *In re I.A.*, 934 N.E.2d at 1133.

[13]    Mother raises two arguments. First, she argues that there is insufficient evidence to support the juvenile court's conclusions that the conditions that resulted in the children's removal will not be remedied.[1] Second, Mother argues that there is insufficient evidence to support the conclusion that termination of the parent-child relationship is in the best interests of the children.

---

[1] Mother also argues that there was insufficient evidence to support the juvenile court's conclusion that continuation of the parent-child relationship poses a threat to the children's well-being. Indiana Code section 31-35-2-4(b)(2) requires proof of only one of the three conditions listed in subsection (B), and we conclude that there is sufficient evidence to support the juvenile court's determination that the conditions resulting in the children's removal will not be remedied. Therefore, we do not address this argument.

# I. Reasonable Probability That the Conditions Resulting in Removal Will Not Be Remedied

[14] Mother contends that the evidence is insufficient to support the juvenile court's conclusions that the conditions resulting in the children's placement outside the home will not be remedied. We engage in a two-step analysis to determine whether the evidence is sufficient. *In re V.A.*, No. 02S04-1602-JT-93, 2016 WL 661748, at *4 (Ind. Feb. 18, 2016). First, we identify the specific conditions that led to placement and retention outside the home and, second, we determine whether there is a reasonable probability that those conditions will not be remedied. *Id.* A parent's fitness at the time of the termination proceeding is the focus of the second inquiry, and juvenile courts have discretion to weigh a parent's prior history more heavily than efforts made only shortly before termination. *In re E.M.*, 4 N.E.3d 636, 643 (Ind. 2014).

[15] Da.H. and Dy.H. were removed from Mother for three reasons: Mother's lack of stable housing, substance abuse, and mental-health condition. The parental participation order required Mother to participate in a home-based counseling program, complete a substance-abuse assessment and successfully complete all treatment recommendations, submit to random drug and alcohol screens, and complete a mental-health evaluation and follow all recommendations resulting from it. Therefore, to terminate the parent-child relationship between Mother and the children, the court had to find that there was a reasonable probability

that Mother's housing, substance abuse, or mental-health issues would not be remedied.[2]

[16] The juvenile court found that "[Mother's] housing has been unstable throughout the CHINS case, residing with family, friends or living in motels." Appellant's App. p. 29. Mother argues that she had stable housing at the time of the TPR hearing—she was renting a room from her father. However, the agreement Mother and her father signed is dated less than a week before the start of the TPR hearing. Mother received months of home-based case management targeted at assisting her with finding a job, connecting to community resources, and obtaining stable housing, but she was unable to make progress and her referral was closed unsuccessfully. The case manager felt there would be ongoing issues and no probability of success in the service. The court could reasonably infer, based on Mother's frequent movement between the homes of family members and friends over the course of the CHINS case and her inability to make progress toward stable housing while working with a home-based case manager, that Mother's living arrangements were not likely to become stable, despite the last-minute agreement that she could live with her father.

---

[2] After concluding that "[t]here is a reasonable probability that the conditions that resulted in the children's removal and continued placement outside the home will not be remedied by their mother[,]" the trial court continued on, saying that Mother "has not been able to become self-sufficient[.]" Appellant's App. p. 29. We view self-sufficiency as another way to explain Mother's lack of stable housing, substance abuse, and mental-health issues. In any event we review the trial court's findings and the evidence addressing only housing, substance abuse, and mental health to determine whether the trial court's conclusion is supported.

[17] As to Mother's substance abuse, no treatment was recommended based on the dual-diagnosis assessment. Therefore, all Mother needed to do was refrain from using illegal drugs and submit to the random drug screening required by the parental-participation order. The order clearly states that a failure to screen will be interpreted as a positive screen. Ex. 11, p. 32. The juvenile court found that Mother "was very inconsistent in random screens, taking her last one, positive for marijuana, in late March or early April 2015." Appellant's App. p. 29. In addition, Mother's therapist testified that Mother admitted to using marijuana around the time of her last screen, and the therapist thought Mother used it to cope with anxiety. Mother's failure to test and the fact that her final test was positive indicate that Mother did not address her substance abuse according to the terms of the parental-participation order.

[18] Finally, the juvenile court found that Mother participated in therapy for her mental health for over a year and the therapist "has seen some improvement in the area of anger management, but sees issues of mental health and instability as still being a struggle for [Mother] to the point that she would be concerned if the children were placed with [her]." Appellant's App. p. 29. In particular, the court found that Mother "was still struggling with anxiety and hopelessness which was a barrier to going forward[.]" *Id.* This is consistent with the therapist's testimony that Mother's anxiety was impeding her progress and that the therapist's biggest concern with the children being returned to Mother was Mother's lack of stability—"being able to even just experience what that is like I think would be a big feat to tackle." Tr. p. 33-34. In addition to therapy,

Mother was prescribed Zoloft for her anxiety and depression, but she quit taking it after a month because she did not think it was helping, and she declined the advice of her therapist that she return to the prescriber or see a different doctor to consider another treatment option. The court's findings are supported by the therapist's testimony and the findings support the conclusion that there is a reasonable probability that Mother's mental-health condition will not be remedied—Mother was willing to participate in therapy, but therapy alone was not sufficient treatment for her anxiety and depression, and Mother was unwilling to pursue treatment beyond that.

[19] The evidence supports the juvenile court's findings that the conditions that led to the removal of the children were not remedied over the twenty-two months of the CHINS case, and the findings support the conclusion that there is a reasonable probability the conditions will not be remedied.

## II. Best Interests of the Children

[20] Mother also contends that DCS did not present clear and convincing evidence that termination is in the best interests of the children. In determining what is in a child's best interests, the juvenile court must look to the totality of the evidence. *In re A.D.S.*, 987 N.E.2d 1150, 1158 (Ind. Ct. App. 2013), *trans. denied.* We have previously held that recommendations by both the FCM and CASA to terminate parental rights, in addition to evidence that the conditions resulting in removal will not be remedied, is sufficient to show by clear and

convincing evidence that termination is in the child's best interests. *Id.* at 1158-59.

[21] Here, the juvenile court's conclusion that termination of the parent-child relationship is in Da.H.'s and Dy.H.'s best interests is supported by the testimony of the CASA, FCM Hicks and FCM Monday, as well as Mother's failure to achieve stable housing and adequately address her substance-abuse and mental-health issues over the twenty-two months of the CHINS case. Mother has not persuaded us that the juvenile court's judgment was clearly erroneous.

[22] Affirmed.

Barnes, J., and Mathias, J., concur.